MANCINO, APPELLEE, *v.* CITY OF LAKEWOOD; DRESCHER, APPELLANT.

220

(No. 51818 — Decided April 7, 1987.)

*Paul Mancino, Jr., pro se.*
*Mario Drescher, pro se.*

ANN MCMANAMON, J.    Mario Drescher ("the prisoner") is presently serving what he states is "a sentence [in excess of] one hundred years" at the Southern Ohio Correctional Facility on a matter unrelated to this case. In *persona propria* he challenges a decision by the common pleas court in favor of his former attorney, Paul Mancino, Jr. ("the lawyer") on a contingent fee contract.

Drescher raises two assignments of error and four supplemental assignments of error.[1] Since there may be merit to the prisoner's first supplemental assignment of error, we reverse and remand for proceedings consistent with this opinion.

The record reflects that the lawyer filed a complaint against the prisoner and the city of Lakewood to enforce an attorney's lien on a settlement agreement. The lawyer alleged that on or about November 27, 1981, he entered into a written agreement with his then-client, to pursue legal action necessary to recover jewelry, coins and other valuables including two guns, all of which are valued at $40,000, belonging to the prisoner, which were held by the Lakewood police. A copy of this agreement was attached as an exhibit to the lawyer's complaint. In December 1984, the lawyer instituted an action on behalf of the prisoner in the United States District Court for the Northern District of Ohio, case No. C82-2744, pursuant to Section 1983, Title 42, U.S. Code.

The record further reflects that the parties in the federal court lawsuit reached a settlement agreement, which required the city of Lakewood to return the prisoner's property to him, with the exception of the weapons. The terms of the settlement agreement and dismissal entry require both the lawyer and the prisoner to execute a release of all claims against the city. The lawyer refused to sign the release until the prisoner paid the promised compensation. The city of Lakewood apparently has not returned the property.

The prisoner answered the complaint, contending that he had not been served with it; that the complaint

_____

[1] See Appendix, *infra,* at 224-225.

disregarded the settlement agreement in the federal court case; and that the lawyer forged the prisoner's name on the settlement agreement.

The case was tried to the court on February 2, 1986 upon plaintiff's complaint and defendant's answer, together with evidence presented at the hearing. The court found the allegations of the complaint to be true, and ordered that, pursuant to the contract of employment, the lawyer is entitled to recover forty percent of the property currently in the possession of the city of Lakewood or forty percent of its value, and that the remaining sixty percent of the items, less costs and attorney fees, be returned to the prisoner.

In his first supplemental assignment of error, the prisoner essentially argues that the trial court erred in failing to permit him to be present at trial when he made every attempt to defend himself in this action.

The record demonstrates that the trial court declined to rule on the prisoner's motion to compel the sheriff to transport him from the prison in Lucasville, Ohio, where he was incarcerated, to the Cuyahoga County Justice Center for trial. Consequently, the prisoner did not appear at trial, nor was he represented by counsel.

A ruling on the request of an incarcerated criminal to prosecute a *pro se* civil action by requiring penal authorities to transport him to a preliminary hearing or trial rests within the sound discretion of the trial court. *Holts* v. *Pitts* (C.A. 6, 1980), 619 F. 2d 558, 560-561. Generally, prisoners who bring civil actions have no constitutional right to be personally present at any stage of the judicial proceedings. *Id.* As the United States Supreme Court has stated:

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now Section 1654, Title 28, U.S. Code], to parties in all courts of the United States to 'plead and manage their own causes personally.' " *Price* v. *Johnston* (1948), 334 U.S. 266, 285-286.

There is no support in the Constitution or in judicial precedent for the proposition that a prisoner has an absolute due process right to attend the trial of a civil action to which he is a party. Any such right must be balanced against the state's interest in avoiding the risks and expenses of transportation. *In re Warden* (C.A. 7, 1976), 541 F. 2d 177, 180-181. See, also, *Tabor* v. *Hardwick* (C.A. 5, 1955), 224 F. 2d 526, 529, certiorari denied (1956), 350 U.S. 971; *McKinney* v. *Boyle* (C.A. 9, 1971), 447 F. 2d 1091, 1094; *Clark* v. *Hendrix* (N.D. Ga. 1975), 397 F. Supp. 966, 969. We note that prisoners have been extended access to law libraries and jailhouse lawyers to assist them in prosecuting lawsuits. *Johnson* v. *Avery* (1969), 393 U.S. 483, 487. However, the United States Supreme Court specifically has chosen not to extend to them the Fourteenth Amendment due process right to physical access to the courts. *Wolff* v. *McDonnell* (1974), 418 U.S. 539, 576, 71 O.O. 2d 336, 352. See *Drescher* v. *Summers* (1986), 30 Ohio App. 3d 271, 273, 30 OBR 469, 471, 507 N.E. 2d 1170, 1172 (Jackson, J., concurring); cf. *In re Colburn* (1987), 30 Ohio St. 3d 141, 30 OBR 452, 507 N.E. 2d 1138.

Whether a prisoner should be permitted to be brought to trial to argue his case personally depends upon the particular circumstances of each case. We hold that the following criteria are to be weighed in making this deter-

mination: (1) whether the prisoner's request to be present at trial reflects something more than a desire to be temporarily freed from prison; (2) whether he is capable of conducting an intelligent and responsive argument; (3) the cost and convenience of transporting the prisoner from his place of incarceration to the courthouse; (4) any potential danger or security risk the prisoner's presence might pose; (5) the substantiality of the matter at issue; (6) the need for an early resolution of the matter; (7) the possibility and wisdom of delaying the trial until the prisoner is released; (8) the probability of success on the merits; and (9) the prisoner's interest in presenting his testimony in person rather than by deposition. *Price* v. *Johnston, supra,* at 284-285; *Stone* v. *Morris* (C.A. 7, 1976), 546 F. 2d 730, 735-736.

The record in the instant case reflects that the prisoner pursued his defense against his lawyer's claim with due diligence. The prisoner answered the complaint; drafted a new "release of claims" form; informally corresponded with the city of Lakewood; moved the court to stay a pretrial order, or, in the alternative, for an order to convey him from the Southern Ohio Correctional Facility to Cuyahoga County to attend an August 19, 1985 pretrial hearing; moved the court for a continuance of the scheduled February 27, 1986 trial date; and demanded a trial by jury. The trial court denied all of these motions. The prisoner then filed an affidavit of prejudice against the trial judge, which was dismissed by the Chief Justice of the Ohio Supreme Court.

The prisoner received notice of trial on February 24, 1986, three days prior to trial. The record contains a motion for an order to compel the Cuyahoga County Sheriff to transport him from Lucasville, Ohio to Cleveland so that he could be present at trial. Although *not* file-stamped by the trial court, this motion is postmarked February 25, 1986, one day after the prisoner received notice of trial, and was made part of the trial record. In the absence of a judgment entry denying the motion, we will presume that the motion was overruled.

While the record contains a document which purports to be a contract, the prisoner maintains that the signature on the document is a forgery, and that the parties had a different, oral agreement. The prisoner faces the prospect of an imminent levy upon a substantial amount of personal property. Nothing in the record indicates that the trial court made a determination, based upon the criteria outlined *supra,* as to whether the prisoner's presence at trial was reasonably necessary under the particular facts of this case. Accordingly, we remand for that determination. See *In re Warden, supra,* at 182. If the trial court determines upon remand that the prisoner is not entitled to attend, then its initial failure to weigh the criteria will be considered harmless error. If, however, the trial court determines that the prisoner's presence at trial is reasonably necessary, the judgment below must be vacated, and the cause must proceed to a new trial.

The prisoner's first supplemental assignment of error is well-taken.

While the due process considerations raised by the prisoner compel us to reverse and remand, we will briefly address his other arguments.

In his first assignment of error, the prisoner contends that the trial court erred in failing to serve him with a copy of the final judgment entry in this case.

Although there is no provision in the Civil Rules which requires that parties be given such notice, the Supreme

Court has recently held that failure to give reasonable notice of final appealable orders is a denial of the right to redress of injuries created by Section 16, Article I of the Ohio Constitution. *Moldovan* v. *Cuyahoga Cty. Welfare Dept.* (1986), 25 Ohio St. 3d 293, 25 OBR 343, 496 N.E. 2d 466.

The record reflects that on June 24, 1986, pursuant to the prisoner's motion, this court ordered the clerk of courts to send a copy of the final judgment entry and transcript, if any, to be used by the prisoner in the preparation of this appeal. Further, in *Moldovan,* the appellant's lack of meaningful notice of the trial court's final, appealable order caused her appeal to be untimely filed. In the instant case, this court permitted the prisoner's delayed appeal. Accordingly, he has not been prejudiced by this claimed error.

The defendant's first assignment of error is overruled.

In his second assignment of error, the prisoner contends that he was entitled to notice that his failure to appear at trial could result in a judgment against him. We note that the court did not proceed on the basis of a default judgment in this matter so as to trigger the notice requirements of Civ. R. 41(B)(1). Rather, the court chose to notify the prisoner of the proceedings; to schedule a trial date; to disregard the prisoner's motion to attend trial; and to proceed to a bench trial on the merits in the prisoner's absence. For the reasons previously stated, due process was denied the prisoner. However, his arguments in regard to improper default procedures are not well-taken.

In his second supplemental assignment of error, the prisoner argues that the instant action was barred by the statute of limitations.

The complaint was timely filed within the fifteen-year limitations period for actions upon contracts, agreements or promises in writing. R.C. 2305.06. This assignment of error is not well-taken.

In his third supplemental assignment of error, the prisoner argues that the instant action is barred by the doctrine of *res judicata* and collateral estoppel. In support of his position, the prisoner has attached as exhibits to his supplemental brief a "motion to enforce attorney lien" filed by the lawyer in June 1985 in the federal court case, and an order filed by a federal magistrate in that case, stating that the court declined to rule on the motion until the lawyer filed a memorandum setting forth the basis for the federal court's jurisdiction and an argument addressing the statute of limitations question. Apparently, the lawyer filed no memorandum and, instead, instituted the instant action in state court.

The exhibits attached to the prisoner's brief are not properly a part of the appellate record. See App. R. 9(A); *Hickman* v. *Ford Motor Co.* (1977), 52 Ohio App. 2d 327, 6 O.O. 3d 365, 370 N.E. 2d 494. Therefore, we will not consider them.

Moreover, the issues raised in this case were neither litigated nor resolved by the settlement in the federal court case. The latter case dealt with the city of Lakewood's duty to return the prisoner's property; the instant case involves a fee dispute between the prisoner and the lawyer. Thus, the doctrine of *res judicata* is inapplicable. See *Johnson's Island* v. *Bd. of Twp. Trustees* (1982), 69 Ohio St. 2d 241, 23 O.O. 3d 243, 431 N.E. 2d 672.

This assignment of error is not well-taken.

In his fourth supplemental assignment of error, the prisoner contends that an action to enforce an attorney's lien is neither recognized nor authorized by the Revised Code.

There is no statute in Ohio which

either permits an attorney's lien on a client's judgment, decree or award, or provides a remedy for enforcement of such lien. However, Ohio courts recognize an attorney's equitable right to enforce such a lien:

"The right of the attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment obtained by him, and is upheld on the theory that his services and skill created the fund. Although there is no provision in the Code creating or recognizing the right of an attorney to a lien as security for payment of compensation for his services, it is plain from a long line of decisions by the courts of this state that the right exists, and in proper cases the courts will lend their aid to maintain and enforce it.

"* * *

"A special or charging lien may be created by an express agreement on the part of the client that the attorney shall have a lien for his compensation on the amount recovered. While, before judgment, an attorney has no lien upon or interest in the cause of action, in the absence of statute, yet where the parties have contracted that the attorney shall receive a specified amount of the recovery, such agreement will operate as an equitable lien in favor of the attorney." 6 Ohio Jurisprudence 3d (1978), Attorneys at Law, Sections 178-179, at 721-722; Section 183, at 725. See, also, *Foor* v. *Huntington Natl. Bank* (1986), 27 Ohio App. 3d 76, 27 OBR 95, 499 N.E. 2d 1297, paragraph two of the syllabus.

An attorney's lien is founded on the equitable principle that an attorney is entitled to be paid his or her fees out of the judgment rendered in the case. See Annotation (1983), 23 A.L.R. 4th 336.

Contingent fee arrangements in civil cases are a widely accepted practice. An attorney and client may lawfully agree upon compensation to the former contingent upon the amount to be recovered, either by settlement or by judgment, and a court will recognize the validity and enforceability of contracts providing for such arrangements. 6 Ohio Jurisprudence 3d (1978), Attorneys at Law, Section 155, at 690.

Accordingly, the lawyer was entitled to bring the instant action under Ohio law, and the prisoner's fourth supplemental assignment of error is not well-taken.

*Judgment reversed and
cause remanded.*

MARKUS, C.J., concurs.

NAHRA, J., dissents.

NAHRA, J., dissenting. As stated by the majority, a prisoner has no absolute right to be present for a civil trial, but it is a matter for the court's discretion. No abuse of that discretion having been shown, I would affirm.

## APPENDIX

The assignments of error are:

"I

"The trial court erred to the prejudice of defendant-appellant's appeal rights by not serving him with a copy of the judgment and final entry of its decision assuming that judgment was granted in favor of the plaintiff to enable him to know what constituted the court's decision since appellant [*sic*] interest at stake was substantial.

"II

"Assuming the trial court granted judgment in favor of the plaintiff it erred to the prejudice of appellant by not furnishing him with the notice

mandated by Civil Rule 41 and any other applicable under the civil rules of procedure to allow appellant to take action to protect his interest."

The defendant's *supplemental* assignments of error are:

"I

"The trial court erred in entering judgment in the plaintiff's favor without allowing defendant-appellant to be present for trial after defendant had taken after [*sic*] precaution as a laymen [*sic*] to diligently defense [*sic*] and protect his interest against the claim of the plaintiff.

"II

"The trial court erred in entering judgment in the plaintiff's favor when said action was barred by the statute of limitation[s].

"III

"The trial court erred in entering judgment in the plaintiff's favor when the plaintiff's action was barred by the doctrine of *res judicata* and collateral estoppel.

"IV

"The trial court erred in granting judgment in the plaintiff's favor when his action was caption [*sic*] complaint to enforce attorney's lien when attorney's liens are not recognized nor authorized by the Ohio Revised Code."